1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:11-cv-00847-SAB |
| Plaintiff, | |
| v. | **ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT** |
| CHRIS CAPRIOTTI, et al., | (ECF Nos. 87, 88, 89, 91, 92, 95, 96, 97, 99, 100, 101, 103, 104, 105, 106, 108, 109) |
| Defendants. | |

**I.**

## INTRODUCTION

Plaintiff United States of America filed this civil action to reduce to judgment outstanding federal tax assessments and foreclose on real property on May 23, 2011. The tax assessments at issue are against Defendants Chris and Carrie Capriotti ("the Capriottis") and their alleged alter egos Oakview Trust and the Chris and Carrie Capriotti Family Trust ("Family Trust"). (ECF No. 1.) Currently pending before the Court are Plaintiff's motion for summary judgment and Defendants Oakview Trust and Family Trust's motion for summary judgment, each filed January 18, 2013. (ECF Nos. 87-92.)

Plaintiff's motion for summary judgment seeks to reduce to judgment individual tax liabilities for tax years 1997 through and including 2002; to have Defendants Oakview Trust and Family Trust declared to be sham trusts created to avoid federal taxes or, in the alternative, that the transfer of the property into the trusts was a fraudulent transfer; and an order of judicial sale entered to enforce the federal tax liens on the Capriottis' residence. (ECF No. 87.) Defendants Oakview

Trust and Family Trust filed an opposition on February 14, 2013, arguing that Plaintiff has offered no evidence that would prove the Capriottis engaged in a fraudulent transfer of their residence; the Family Trust is a revocable trust which no longer contains the subject property so the claim is moot as to this trust; and the property is now held by Oakview Trust, an irrevocable trust, which is not a sham trust, nominee or alter ego of the Capriottis, so the assets cannot be reached by a creditor. (ECF No. 95.)  The Capriottis filed an opposition on February 20, 2013, asserting that Plaintiff's motion relies on inadmissible evidence, fails to address a disputed jurisdictional issue, and lacks factual and legal support.  (ECF No. 96.)

Defendants Oakview Trust and Family Trust move for partial summary judgment on the ground that there is no genuine issue of material fact to support the contention that Global Administrative Services ("GAS"), as administrator of the trusts, is a sham trustee, nominee, or alter ego for Defendants nor is there any genuine issue of material fact to support the government's claims that the trust is a sham or that the transfer of the property was fraudulent.[1]  (ECF No. 92.)  Plaintiff responds that Defendants misapprehend the issues involved in this litigation as the arguments set forth regarding the legal status of GAS is not dispositive as to the right to foreclose on the federal tax liens.  Further, the arguments that GAS has a distinct and separate existence supports the arguments made in support of Plaintiff's motion for summary judgment.  (ECF No. 97.)

The Court heard oral arguments on March 6, 2013.  Counsel William McPike appeared for the Capriottis, counsel John William Phillips appeared for Oakview Trust, Family Trust, and GSA, and counsel Richard Schwartz appeared for the United States. The parties were granted leave to file supplemental briefing on the issues of the intent required for a fraudulent transfer and the interest charges assessed to the Capriottis.  The final briefing was filed on March 28, 2013.  (ECF Nos. 108, 109.)  Having considered the moving, opposition, reply papers, and supplemental briefs, the declarations and exhibits attached thereto, and arguments presented at the March 6, 2013 hearing, as well as the Court's file, the Court issues the following order.

---

[1]Although Defendants motion is entitled Oakview and Family Trusts motion for summary judgment, it is actually brought by Defendant GAS.  Accordingly, the motion shall hereafter be referred to as GAS' motion for summary judgment.

1    For the reasons discussed below, the Court shall grant Plaintiff's motion for summary

2    judgment and deny Defendant GAS' motion for summary judgment.

3                                              II.

4                                   FACTUAL BACKGROUND

5    A.      Undisputed Facts Asserted by the United States

6            1.      The Tax Liabilities of Chris and Carrie Capriotti

7            Chris Capriotti has owned and run a heating and air conditioning business known as Capriotti

8    Air Conditioning and Heating in the Fresno area for over 18 years.[2]  Chris and Carrie Capriotti filed

9    a joint federal income tax return for 1996.  This return became the subject of an audit examination

10   by the Internal Revenue Service ("IRS").  The IRS expanded its examination of Chris and Carrie

11   Capriotti's income tax liabilities to include the years 1996, 1997, 1998, and 1999.

12           At some point in 1996, the Capriottis set about creating documents purporting to place all

13   of their property in trusts, including their real property.  At that time, the Capriottis created the BAR

14   Trust, Trans Trust, CFCS Trust and the Chris and Carrie Capriotti Family Trust.  The Capriottis

15   opened checking accounts in the names of the Oakview Trust, the Trans Trust, the CFCS Trust, and

16   the BAR Trust, with themselves as signatories.  The funds in the various trust accounts came from

17   the business of Chris Capriotti and were passed through the BAR Trust to pay the Capriottis'

18   personal expenses.  GAS has not and does not maintain any of these bank accounts.

19           At the completion of this process, all of the Capriottis' property was held in one or another

20   of the various trusts.  The Capriottis testified that they have filed no federal individual income tax

21   returns since the 1998 tax year through at least 2002, based on their belief that they had no "income"

22   under federal law.  Chris Capriotti asserted his Fifth Amendment right and declined to answer any

23   questions regarding whether or not he has filed any federal income tax returns since 2002.

24   _____

25       [2]The parties did not comply with the scheduling order, so the Court ordered them to meet and confer to
     agree on a joint statement of undisputed facts.  The Capriottis then did not comply with the second order to meet and
26   confer.  Although the Capriottis failed to participate in the joint statement of undisputed facts, the Court notes the
     facts are substantially similar to those originally submitted in Plaintiff's motion for summary judgement and the
27   Capriottis' response to those facts shall be considered.  The Capriottis' objection based on lack of transcript
     certification is overruled.  To the extent that the Capriottis contend that the declaration does not support the
28   statements made, the Court has reviewed the record and Defendant Capriotti stated that he has been employed by
     Capriotti Heating and Plumbing for the last 18 years.  (ECF No. 89-2 at 18:24-19:12.)

The IRS examination identified trusts that were created by Chris and Carrie Capriotti, including the Chris and Carrie Capriotti Family Trust, the Oakview Trust, the Trans Trust, the CFCS Trust, and the BAR Trust (collectively, "the Capriotti trusts"). The IRS assessed deficiencies, asserting that the trusts should be disregarded and their income imputed to the Capriottis for federal tax purposes. The IRS determined that the Capriottis putting all of their properties in the names of the various trusts constituted what is commonly referred to as a "flow-through" or "focus" trust arrangement, with Bar Trust as the "focus trust."[3]

During the course of the examination, the Capriottis obtained the representation of Monty Schultz, CPA. Schultz believed that the Capriottis' trust scheme was unsupportable and typical of "suspect" trust schemes designed to "eliminate your income tax" that were being promoted in the area at the time. The Capriottis failed to cooperate with the IRS examination in any substantive way, but rather sent a number of letters to the IRS asserting that they were not subject to federal income tax and espousing various tax avoidance arguments. The Capriottis were given the opportunity to accept the audit results or bring an administrative challenge and failed to do either. The Capriottis now assert that they have no documentation of their income earning activity during the relevant period.

The IRS collected information from numerous third party sources in order to reconstruct the Capriottis' income for the 1996 through 1999 tax years, including bank records for a bank deposit analysis. Brooks performed a bank deposit analysis with these records. The Capriottis' taxable income for the tax year 1996 was increased by $145,441, for both Chris and Carrie Capriotti, as a result of the audit deficiency determination. Additional deficiencies were assessed for the 1997 through 1999 tax years. For the years 2000 through 2002, periods in which the Capriottis filed no federal income tax returns, the IRS determined the Capriottis' tax liabilities using deficiency procedures pursuant to 26 U.S.C. §§ 6212-13.

2.    Assessments and Current Liabilities

On the dates, in the amounts, and for the tax periods set forth below, a duly authorized

---

[3] While GAS may dispute these conclusions, GAS does not dispute that these findings were made.

delegate of the Secretary of Treasury made assessments against Chris Capriotti for unpaid federal

income taxes, penalties, interest, and other statutory additions as follows:

| Tax Type | Tax Period | Assessment Date | Tax Assessed | Interest Assessed | Penalty Assessed | Balance due as of 11/01/12, including unassessed interest and accruals |
|---|---|---|---|---|---|---|
| 1040 | 1998 | 10/07/2002 | $203,321 | $74,756.02 | $50,830.25 (late filing penalty) | $624,901.54 |
| | | 10/7/2002 | | | $50,245.24 (failure to pay penalty) | |
| | | 10/31/2005 | | | $24.00 (fees) | |
| 1040 | 1999 | 10/07/2002 | $141,501 | $36,448.75 | $35375.25 (late filing penalty) | $411,446.75 |
| | | 10/07/2002 | | | $35,375.24 (failure to pay penalty) | |
| | | 10/31/2005 | | | | |
| 1040 | 2000 | 12/20/2004 | $1,601 | $441.20 | $360.23 (late filing penalty) | $4,347.66 |
| | | 12/20/2004 | | | $360.22 (failure to pay penalty) | |
| | | 10/30/2006 | | | $40.03 (failure to pay penalty) | |
| | | | | | $64.00 (fees) | |
| 1040 | 2001 | 12/20/2004 | $2,732 | $478.78 | | $6,915.08 |
| | | 12/20/2004 | | | $108.11 (estimated tax penalty) | |
| | | 12/20/2004 | | | $614.70 (late filing penalty) | |
| | | 12/20/2004 | | | $450.78 (failure to pay penalty) | |
| 1040 | 2002 | 12/20/2004 | $818 | $79.76 | 184.05 (late filing penalty) | $1902.38 |
| | | | | | $85.89 (failure to pay penalty) | |
| Total | | | | | | $1,049,513.41 |

Proper notice has been given and demand made for payment of the assessments set forth on

Chris Capriotti.  Despite timely notice and demand for payment of the assessments, Chris Capriotti

has neglected, failed or refused to fully pay these assessments for tax years 1998, 1999, 2000, 2001,

and 2002, which remain due and owing with an unpaid balance of $1,049,513.41 for Chris Capriotti,

plus statutory interest and other additions allowed by law from November 1, 2012.

On the dates, in the amounts, and for the tax periods set forth below, a duly authorized delegate of the Secretary of Treasury made assessments against Carrie Capriotti for unpaid federal income taxes, penalties, interest, and other statutory additions as follows:

| Tax Type | Tax Period | Assessment Date | Tax Assessed | Interest Assessed | Penalty Assessed | Balance due as of 11/01/12, including unassessed interest and accruals |
|---|---|---|---|---|---|---|
| 1040 | 1998 | 10/07/2002 | $203,321 | $78,087.14 | $50,830.25 (late filing penalty) | $634,769.44 |
| | | 10/7/2002 | | | $50,820.17 (failure to pay penalty) | |
| 1040 | 1999 | 10/07/2002 | $141,501 | $36,448.75 | | $411,553.69 |
| | | 10/07/2002 | | | $35,375.25 (late filing penalty) | |
| | | 10/24/2005 | | | $35,375.24 (failure to pay penalty) 24.00 (fees) | |
| Total | | | | | | $1,046.323.13 |

Proper notice has been given and demand made for payment of the assessments on Carrie Capriotti. Despite timely notice and demand for payment of the assessments, Carrie Capriotti has neglected, failed or refused to fully pay these assessments for tax years 1998 and 1999, which remain due and owing as with an unpaid balance of $1,046,323.13[4] for Carrie Capriotti, plus statutory interest and other additions allowed by law from November 1, 2012. On the dates, in the amounts, and for the tax periods set forth below, a duly authorized delegate of the Secretary of Treasury made assessments against Chris Capriotti and Carrie Capriotti, jointly and severally, for unpaid federal income taxes, penalties, interest, and other statutory additions as follows:

///

///

_____

[4] The Court notes that the undisputed facts contained a typographical error and the amount of the 1998 assessment is $634,769.44. (*See* Exhibit 1 at 3, ECF No. 88-1; ECF No. 101-1 at ¶ 9.)

| Tax Type | Tax Period | Assessment Date | Tax Assessed | Interest Assessed | Penalty Assessed | Balance due as of 11/01/12, including unassessed interest and accruals |
|---|---|---|---|---|---|---|
| 1040 | 1997 | 06/08/1998 | $2,338 | $37,456.93 | $22,376.80 (misc. penalty) | $359,446.30 |
| | | 04/30/2001 | $111,884 | | $27,971.00 (failure to pay penalty) | |
| | | 04/30/2001 | | | $24.00 (fees) | |
| | | 10/31/2005 | | | $24.00 (fees) | |

Proper notice has been given and demand made for payment of the assessments set forth on Defendants Chris and Carrie Capriotti. Despite timely notice and demand for payment of the assessments, Chris and Carrie Capriotti have neglected, failed or refused to fully pay these assessments for tax year 1997, which remain due and owing as with an unpaid balance of $359,446.30 for Carrie Capriotti, plus statutory interest and other additions allowed by law from November 1, 2012.

    3.   <u>The Property</u>

The Capriottis acquired the property at 27484 Oak Flat Lane, Clovis, California from Mary Capriotti, Chris Capriotti's mother, by way of a Grant Deed recorded on April 24, 1987. At some point in 1996, the Capriottis signed documents purporting to place all of their property in trusts, including their real property. The Capriottis executed a Trust Transfer Deed, naming themselves as grantors and The Chris and Carrie Capriotti Family Trust as grantee, recorded with the Fresno County Recorder's Office on October 14, 1996. According to the original document transferring the property to the Chris and Carrie Capriotti Family Trust, the Family Trust was revocable at the discretion of the Grantors. Chris Capriotti and Carrie Capriotti were trustees of the Family Trust. In deposition testimony, neither Chris nor Carrie Capriotti were able to identify any other trustees.

The Capriottis then filed a Trust Transfer Deed recorded on June 28, 1999, naming the Chris and Carrie Capriotti Family Trust as grantor and Oakview Trust as grantee. The grant deed recorded on October 14, 1996, reflects that the transfer from the Capriottis to the Family Trust was made without consideration. The grant deed recorded on June 28, 1999 did not recite any consideration for the transfer from the Family Trust to Oakview Trust. Testimony by Chris Capriotti, Carrie Capriotti,

and John Harvey confirm that no money was ever exchanged or paid for either transfer.   The Capriottis opened various bank accounts in the names of the Capriotti trusts, to which they were signatories with individual signatory authority.  Global Business Services[5] ("GBS")/GAS did not open any of these bank accounts.

The Capriottis continued to pay all home-related expenses, including a mortgage in the name of Chris and Carrie Capriotti on the property during the period in question.  The Capriottis transferred money through the accounts of Oakview Trust or its trustee to pay for the property taxes.  The Capriottis paid the property taxes on the Oak Flat Lane property either directly or through monies they controlled through the Capriottis' trusts.  At least as late as 1999, the property tax records of Fresno County reflected that the Chris and Carrie Capriotti were the owners of the Oak Flat Lane property.[6] After the formation of the trusts, Chris Capriotti continued to run his business and the Capriottis continued to live in and maintain their home on Oak Flat Lane.

4.    Oakview Trust

Chris Capriotti testified that, after the Capriottis executed a transfer of title to their real property from the Family Trust to Oakview Trust in 1999, Chris Capriotti initiated an association with GBS, then trustee of Oakview Trust, a position which he describes as "protector."  In that capacity, he had the authority to remove and replace trustees.

John Harvey and Kurt Kistler, the latter operating under the d/b/a name "KKP," were the trustees indicated on the grant deed purporting to transfer title from the Chris and Carrie Capriotti Family Trust to Oakview Trust.  John Harvey is identified as trustee in Oakview Trust documents.

---

[5]Defendants motion for summary judgment refers to Global Business Services ("GBS") as the trustee in this action.  (ECF No. 92 at 1.)  At the time that Oakview Trust was established, the original trustees were John Harvey and Kurt Kistler.  (ECF No. 100-2 at ¶ 42.)  After the original trustees resigned in 2003, GBS became the trustee of Oakview Trust.  (Decl. of Norman Parsons, 10:9-21, 48:20-49:10.)  GBS later became Global Administrative Services ("GAS").  (Id. at 6:21-25.)  On August 3, 2009, GAS became the trustee of Oakview Trust.  (ECF No. 89-8 at 2.)

[6]The Capriottis state this fact is contradicted at Exhibit 1, 19:20-25.  The evidence at issue during this section of the deposition testimony is the property tax statement for the 1999-2000 tax year.  See Exhibit 17 at 4.  The existence of this exhibit showing KKP as Trustee, which would have been issued at the end of 1999, does not contradict the statement that at some time during 1999 the property tax records reflected the property was in the Capriotti's name.  Further, the transfer trust deed placing the property in Oakview Trust, c/o KKP, was filed on May 25, 1999.  (Brooks Decl., Exhibit E, ECF No. 91-5.)

1   According to Mr. Kistler, he "never handled any money," and was not aware of any sale purportedly

2   moving the Oak Flat Lane property into the name of Oakview Trust. Rather, he "just changed" names

3   on the documents. According to Mr. Kistler, as a trustee of Oakview Trust, he had no oversight or

4   control over the property in trust, stating, "[t]he only thing I knew was that the property was now

5   under my name and another trustee's name." Mr. Kistler resigned immediately upon becoming aware

6   that the IRS was investigating Oakview Trust, asserting that he "wasn't doing anything" with respect

7   to the trusts.

8          Mr. Harvey took no "active roll" in the management of the trust or performed any actual

9   supervision over the property purportedly held by the trust. Oakview Trust "does no business, has

10  no income[,]" holds no money, collects no rent from the Capriottis, does not pay bills related to the

11  maintenance of trust property or pay for services related to the property. Chris and Carrie Capriotti

12  were designated as managers of Oakview Trust. Chris and Carrie Capriotti had signatory authority

13  over bank accounts held in the name of Oakview Trust and/or GBS. Oakview Trust's current trustee

14  and successor to GBS, is GAS. The Capriottis are the source of funding for legal counsel for

15  Oakview Trust in this matter.

16         5.      The Federal Tax Liens

17         On the dates listed below, in order to provide notice to third parties of statutory liens in

18  compliance with 26 U.S.C. § 6323, the IRS filed notices of federal tax lien with the Fresno County

19  Recorder against Chris and Carrie Capriotti for the individual income tax liabilities for the tax periods

20  set forth below:

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

| Tax Period Ending | Taxpayer(s) | Date(s) Recorded |
|---|---|---|
| 12/31/1996 | Chris Capriotti<br>Carrie Capriotti<br>Oakview Trust | 05/01/2001<br>05/01/2001<br>05/01/2001, 07/23/2007 |
| 12/31/1997 | Chris Capriotti<br>Oakview Trust<br>Carrie Capriotti | 12/29/2003<br>07/23/2007<br>04/04/2010 |
| 12/31/1998 | Carrie Capriotti<br>Chris Capriotti<br>Oakview Trust | 12/09/2003<br>01/20/2004<br>07/23/2007 |
| 12/31/1999 | Chris Capriotti<br>Carrie Capriotti | 12/09/2003<br>01/20/2004 |
| 12/31/2000 | Chris Capriotti | 09/26/2005 |
| 12/31/2001 | Chris Capriotti | 09/26/2005 |
| 12/31/2002 | Chris Capriotti | 09/26/2005 |

## B.    Undisputed Facts Asserted By Global Administrative Services

This is an action brought by the United States to collect taxes owed by Chris and Carrie Capriotti, in part by foreclosing against property held in the name of Oakview Trust, of which GAS is the named trustee.[7]  The United States is not seeking to foreclose against any federal tax liability owed by GAS.

GAS, is an LLC registered with the Secretary of State of the State of California.  GAS, provides administrative services to private trusts, including Oakview Trust, although Oakview Trust "does no business, has no income." According to various trust documents and testimony of its representatives, GAS is the current Trustee of the "property" which is the subject of this case currently held in the Oakview Trust.

According to a representative of GAS, it has obtained all business license required by law to do business as a Limited Liability Company in the State of California, County of Fresno, City of Fresno.  A representative of GAS has testified that GAS provides trust administration services to Oakview Trust.  GAS maintains separate bank accounts, a business account for GAS, and a trust

---

[7]As noted previously, the Capriottis did not participate in preparing the joint statement of undisputed facts as required by the order of the magistrate judge.  (Scheduling Order 4:8-23, ECF No. 53.)  However, the court has considered their response to Plaintiff's statement of undisputed facts.

account for the trusts.

According to GAS, it keeps minutes in the course of business when deemed necessary by the managers, and additionally has at least one yearly meeting and documents such meeting with minutes kept in with its records.  However, no minutes dating prior to 2003 have been produced with respect to Oakview Trust.  Oakview Trust is the current titleholder of record with respect to the Oak Flat Lane property.  Representatives of GAS have stated that "The Oakview trust is an irrevocable trust. . . Capriotti has never exercised control and dominion over Oakview Trust or its property in such a manner which would have caused it to be a sham, nominee, or alter ego of the Capriottis."  In addition, aside from the Oak Flat Lane property, no property held by either the Capriotti Family Trust or the Oakview Trust has been administered by GAS.

### III.

### PROCEDURAL HISTORY

Plaintiff filed this action on May 23, 2011, against Defendants Carrie Capriotti, Chris Capriotti, Global Business Services, Oakview Trust, Family Trust, and State of California Franchise Tax Board to reduce to judgment the outstanding federal tax assessments made against the Capriottis; to adjudicate that Oakview Trust and Family Trust are nominees, alter egos, or fraudulent transfees of the taxpayers; to adjudicate that Oakview Trust and Family Trust are sham trusts; and to foreclose on federal tax liens against certain real property. (Compl. 1-2, ECF No. 1.) Plaintiff filed an amended complaint on September 30, 2011, to clarify the identity of the trustee for Oakview Trust as being GAS.  (ECF No. 32.)

The Capriottis filed a motion for discovery on June 8, 2012, which was addressed by the magistrate judge on June 13, 2012.  (ECF Nos. 56, 59-61.)  Plaintiff filed a motion for a protective order which was granted on July 20, 2012.  (ECF Nos. 65-67.)  An extension of the discovery deadline was granted and all discovery was to be completed by November 29, 2012.  (ECF No. 73.)  On December 4, 2012, Plaintiff filed a motion for a protective order which was denied as untimely on January 28, 2013.  (ECF Nos. 76, 94.)

On January 18, 2013, Plaintiff filed a motion for summary judgment seeking to reduce tax assessments to judgments against the Capriottis and to foreclose federal tax liens on property that is

the subject of this suit. (ECF No. 87-91.)  On the same date, Oakview Trust and Family Trust filed

a motion for summary judgment on the ground that no evidence exists to create a genuine issue of

material fact that GAS is a sham nominee or alter ego for Oakview Trust, Family Trust, or the

Capriottis. (ECF No. 92.)  Oakview Trust and Family Trust filed an opposition to Plaintiff's motion

for summary judgment on February 14, 2013.  (ECF No. 95.)  On February 20, 2013, the Capriottis

filed an opposition to Plaintiff's motion for summary judgment; and Plaintiff filed an opposition to

Defendants' motion for summary judgment.  (ECF Nos. 96, 97.)  On February 25, 2013, the parties

were ordered to meet and confer and submit a joint statement of undisputed facts.  (ECF Nos. 98.)

On March 1, 2013, Plaintiff and Oakview Trust and Family Trust submitted a joint statement

of undisputed facts.  (ECF No.  100.)  On the same date, the Capriottis' counsel submitted a

declaration that he was too busy with his practice to participate in an "after the fact" conference

regarding a statement of facts, and further, his clients would not stipulate to any joint statement of

facts because they were not served with certified copies of the deposition transcripts.[8] (ECF No. 101.)

 A hearing on the parties motions for summary judgment was held on March 6, 2013, and the parties

were granted leave to file supplemental briefing on the amount of interest assessed by the IRS against

the Capriottis and the intent required for fraudulent transfers.  (ECF No. 102.)  The parties filed

supplemental briefing on March 13, 2013.  (ECF Nos. 103, 104, 105.)  On  March 19, 2013, Plaintiff

filed a response.  (ECF No. 106.)  On March 28, 2013, the Capriottis filed a reply and Defendants

Oakview Trust and Family Trust filed a notice of joinder in the reply.  (ECF Nos. 108, 109.)

## IV.

## JURISDICTION

The Capriottis argue that this Court lacks jurisdiction in this action pursuant to 26 U.S.C. §

7401 because Plaintiff has not presented evidence that the action was commenced at the direction of

---

[8]The Capriottis complain that they were not provided with certified copies of the deposition transcripts in this action.  A party is not required to provide certified copies of the transcripts to defendants.  Defendants are able to obtain the certified transcripts by contacting the court reporter and paying the required fee to obtain the transcripts.  *See* Fed.R.Civ.P. 30(f)(3) (when paid a reasonable charge the deposition officer must furnish a copy of the transcript to any party or deponent.)  There is no statute or federal rule that requires a party to provide complimentary copies of deposition transcripts.  If Defendants want copies of deposition transcripts, they are required to obtain them by paying the reasonable fee to the deposition officer.  Miller v. Rufion, No. 1:08-cv-01233-BTM (WMc), 2010 WL 4137278, at *1 (E.D.Cal. Oct. 19, 2010).

the attorney general or authorized by the Secretary of the Treasury.  (Def. Capriottis' Opp. To U.S.'s Summary Judgment Mot. 2,[9] ECF No. 96.)  Plaintiff replies that Defendants' argument is not only meritless, but it is frivolous; and Defendants have produced no evidence to suggest that such authorization is lacking.  (Reply to Opp. To Government's Mot. for Summary Judgment 7, ECF No. 99.)

Pursuant to 26 U.S.C. § 7401, an action for the recovery or collection of taxes can only be commenced when authorized by the Secretary and the Attorney General or his delegate directs that the action be commenced.  Defendants have not produced any evidence to counter the "normal presumption of regularity that attaches to the actions of public officers."  Palmer v. U.S. I.R.S., 116 F.3d 1309, 1311 (9th Cir. 1997).  Additionally, Plaintiff has submitted a copy of the letter from the Acting Assistant Attorney General, dated December 20, 2010, authorizing that this action be commenced.  The statutory requirements have been met and the Court does have jurisdiction over this action.

## V.

## EVIDENTIARY OBJECTIONS

The Capriottis object to the declarations of Rosalyn Brooks ("Brooks") and Dennis Stiffler ("Stiffler"), arguing these declarations may not be considered in determining Plaintiff's motion for summary judgment.

### A.    Declaration of Rosalyn Brooks

The Capriottis contend that the declaration of Brooks must be disregarded because she was never identified as a witness in the government's initial disclosures or in the response to interrogatories.  (ECF No. 96 at 5.)  Plaintiff replies that the initial disclosure identified "a representative of the Internal Revenue Service" and "any witness identified by defendant." (ECF No. 99 at 9.)  Plaintiff argues that while the Capriottis state they were unaware of Brooks, she was noticed for a deposition on May 25, 2012.  This deposition notice was the subject of the protective order

---

[9]All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1  which was granted in this case.  (Id.)

2      Rule 26(a)(1)(a) provides that, without waiting for a discovery request, a party must provide

3  to the other parties the names and contact information of witnesses, copies of all documents, and a

4  compilation of damages.  The parties are required to supplement the initial disclosures in a timely

5  manner as the information becomes known during the discovery process.  Fed.R.Civ.P. 26(e).

6  Although the Capriottis assert that they were unaware of the government's reliance on Brooks as a

7  witness, in Plaintiff's initial disclosures a representative of the Internal Revenue Service having

8  knowledge regarding the IRS records on the federal income tax assessments was identified.  (ECF

9  No. 96-2 at 5.)  Plaintiff has also submitted supplemental initial disclosures, dated May 25, 2012, that

10  identify Brooks as the IRS Revenue Agent having knowledge of the tax assessments at issue in this

11  matter.  (ECF No. 99-3 at 3-4.)  The deposition notice issued by Oakview Trust and Family Trust on

12  May 25, 2012, specifically identifies Brooks as the person to be deposed.  Defendants were aware at

13  the time of the initial disclosures that an IRS agent would be called as a witness to testify to the tax

14  assessments at issue here.  Further, the identity of this person was available by at least May 25, 2012.

15  Defendants' objections based upon lack of disclosure of the witness is overruled.

16      The Capriottis claim that Brooks should be excluded as a witness based upon the failure of

17  Plaintiff to produce her at the deposition on December 4, 2012.  In this instance, Defendants noticed

18  the deposition outside the discovery deadline.  At the time the deposition was noticed, Defendants

19  were aware that a dispute existed as to the extent of the protective order that had been issued in this

20  action because Plaintiff had objected to the original deposition notice on that ground.  Defendants did

21  not seek an extension of the discovery deadline nor bring any discovery dispute to the attention of the

22  court during the period between the issuance of the extension of time to conduct the deposition and

23  the discovery cut-off date.[10]  The Capriottis' objection based upon the failure to produce Brooks for

24  the deposition is overruled.

25      Finally, the Capriottis object to Brooks' declaration on the ground that the prior protective

26

27

28      [10]The Court applies the "pragmatic common sense" approach that a party should depose all witnesses at the
earliest opportunity, rather than waiting until the end of the discovery period where issues may arise to prevent the
discovery from proceeding within the period allowed by the scheduling order.

order found that the opinions, conclusions, and reasoning of IRS employees is irrelevant and beyond discovery.  (ECF No. 96 at 6.)  On June 27, 2012, Plaintiff requested a protective order because Oakview Trust and Family Trust were seeking to depose IRS officials that were improperly noticed and sought information irrelevant to this action. (Motion for Entry of Protective Order, ECF No. 65.) The Court found that the depositions had been improperly noticed and that the Trust defendants did not have standing to challenge the tax assessments against the taxpayers, the Capriottis.  (Order Granting Motion for Entry of Protective Order 4, ECF No. 67.)  The magistrate judge found that the Trust defendants were seeking discovery on matters that are irrelevant to its role as a party in this action, and the actions taken by the IRS was irrelevant in this de novo proceeding.  (Id. at 4.)

This Court declines to extend this finding to the extreme suggested by the Capriottis that the IRS cannot present evidence regarding the tax assessments against them.   The protective order specifically found that the bases for the tax assessments at issue in this action are contained in the written records and documents produced by Plaintiff in discovery and requiring individual federal officers to appear would be unduly burdensome as all relevant information was already of record in the case.  (Id. at 4-5.)  The Capriottis's objection on this ground is overruled.  The Court finds that the declaration of Brooks is admissible evidence that can be considered in determining the motion for summary judgment.  Fed.R.Civ.P. 56(c)(1).

### B.     Declaration of Dennis Stiffler

The Capriottis also contend that the calculations submitted by Stiffler are inadmissible as they were prepared for the purpose of litigation and, therefore, do not qualify under the business records exception to the hearsay rule.  (ECF No. 97 at 8.)   "Hearsay is inadmissible on summary judgment to the same extent it would be at trial, as is testimony not based on the affiant's personal knowledge of the events detailed in the declaration." Tracchia v. Tilton, No. CIV S-06-2916 GEB KJM P, 2009 WL 3055222, at *3 (E.D.Cal. Sept. 21, 2009).  "An objection based on hearsay inherently is bound to the context in which the allegedly objectionable evidence is offered." Sanchez v. Penner, No. CIV S-07-0542 MCE EFB P, 2009 WL 3088331, * 5 (E.D.Cal. Sept. 22, 2009).

In this instance, Stiffler's testimony is being offered "to explain" the relevance of the business records that are being proffered to prove the tax liability of the Capriottis, not to create the record.

1   Federal Rule of Evidence 803(8) allows the statement of a public officer in a civil case where "it sets

2   out the officer's activities" and "factual findings from a legally authorized investigation; and neither

3   the source of the information nor other circumstances indicate a lack of trustworthiness."   Stiffler's

4   declaration states that he has received training and experience which qualify him as a specialist in

5   Abusive Tax Avoidance Transactions; and he was assigned to research and compute the current

6   outstanding balances of liabilities owed by the defendants in this litigation.  In researching this action,

7   he has accessed the IRS files of the Capriottis and reviewed their files to compile the tax assessments

8   due.  (Stiffler Decl. ¶ 2, ECF No. 88.)  Further, IRS documents, even when generated by a computer,

9   are admissible as public records.[11]  Hughes v. United States, 953 F.2d 531, 540 (9th Cir. 1992).

10      Finally, Defendants argue that the failure to turn over the records subpoenaed from their banks

11  should raise an unfavorable inference.  Upon review of the bank documents submitted in support of

12  this motion, either one or both of the Capriotti's were signatories on the accounts.  (*See* Decl. of

13  Aaron Bailey, Exhibits 17 - 18, ECF No. 89-17 through 89-18.)  The records subpoenaed from the

14  banks, which were bank statements, cancelled checks, deposits, etc., were equally available to the

15  Capriottis as signatories on the bank accounts.  The Court finds the declaration is admissible under

16  Federal Rule of Evidence 803(8).[12]

17  ///

18  ///

19

20

21      [11]Defendants also argue that the declaration must be disregarded because no notice was attached to
    substantiate the statement that notice was given.  However, the notices of federal tax liens are attached to the
    declaration.  (ECF No. 88-12 at 2-13.)  Additionally, notices of deficiency sent to Chris Capriotti are attached to the
22  declaration of Brooks.  (ECF No. 91-12 at 2-5.)

23      [12]The Court has considered Oakview Trust and Family Trust's objections to the declarations of Stiffler and
    Brooks based upon lack of foundation and hearsay.  On summary judgment, evidence need not be in a form that is
24  admissible at trial.  *See* Burch v. Regents of the University of California, 433 F. Supp. 2d 1110, 1118-24 (E.D. Cal.
    2006).  Accordingly, as long as a party submits evidence, which, regardless of its form, may be admissible at trial, it
25  may be considered on summary judgment.  Burch, at 1120 (citing, Fraser v. Goodale, 342 F. 3d 1032, 1036-37 (9th
    Cir. 2003)).  Defendants' hearsay objection is based upon Stiffler's examination of the taxpayer records in this
26  action and such records would be admissible to prove the truth of the statements made.  Defendants' objections on
    lack of foundation and hearsay are overruled.

27

28      To the extent that the statements contained in the declarations state a legal conclusion, such statements shall
    not be considered in determining the motion for summary judgment.

1

# VI.

2

## MOTION FOR SUMMARY JUDGMENT

3

### A.     Parties' Motions for Summary Judgment

4       Plaintiff moves for summary judgment on the tax liability of the Capriottis for the 1997

5   through 2002 tax years and a determination that Oakview Trust and Family Trust are sham trusts,

6   nominees, or fraudulent transferees.  Plaintiff is seeking a judgment to enforce the tax liens in the

7   amount of $1,049,513.41 against Defendant Chris Capriotti, $1,046,323.13 against Defendant Carrie

8   Capriotti, and $359,446.30 against the Capriottis jointly.  Plaintiff seeks an order that the federal tax

9   liens be foreclosed upon the subject property.

10       Defendant GAS moves for summary judgment asserting that the government has provided no

11   evidence that GAS is a nominee or alter ego for the trust defendants or for the Capriottis.

12

### B.     Legal Standard

13       Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

14   it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party

15   is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time

16   for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

17   existence of an element essential to that party's case, and on which that party will bear the burden of

18   proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The "party seeking summary

19   judgment bears the initial responsibility of informing the district court of the basis for its motion, and

20   identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions

21   on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine

22   issue of material fact."  Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil

23   Procedure).

24       "Where the moving party will have the burden of proof on an issue at trial, the movant must

25   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."

26   Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007.)  If the nonmoving party will

27   bear the burden of proof at trial, the movant can prevail by merely pointing out the absence of

28   evidence to support the non-moving party's case.  Soremekun, 509 F.3d at 984.  If the moving party

meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  If the non-moving party does not produce enough evidence to create a genuine issue of material fact, the moving party is entitled to summary judgment.  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, 210 F.3d 1099, 1103 (9th Cir. 2000).

Plaintiff's moving papers have identified the basis of the motion for summary judgment and those portions of the record which it believes demonstrates the absence of a genuine issue of material fact as to the tax liabilities of the Capriottis and the substance of the trusts and relevant transfers. Defendant GAS' moving papers have identified the basis for its motion for summary judgment and those portions of the record that it believes demonstrates the absence of a genuine issue of material fact as to whether GAS is a sham trustee as a nominee or alter ego of the Capriottis or the Trusts. Since the parties have met their initial burden, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus., 475 U.S. at 586 (1986).

## VII.

## DISCUSSION

### A.    The Capriottis' Tax Liability

Plaintiff contends that the Capriottis are liable for federal tax assessments for taxable years 1997 though and including 2002.  The Capriottis argue that the claims for 1997 are time barred, the tax assessments lack evidence of income and proper tax amounts, and there is no evidence to support the penalties and other assessments.[13]

1.    Whether Tax Claims For 1997 Are Barred By The Statute of Limitations

---

[13] Defendants also argue that Plaintiff is attempting to collect tax assessments for the 1996 tax year, however review of Plaintiff's motion for summary judgment reveals that Plaintiff is seeking tax assessments for the 1997 through 2002 tax periods.  (ECF 87-2 at 22-23.)

1    The Capriottis contend that the tax claims for 1997 are time barred since there is a three year

2    period for making assessments after the filing of the tax form.  They argue that their 1997 tax return

3    was filed on May 14, 1998, and the Certificate of Assessment is dated June 29, 2010, over ten years

4    after the date the return was filed.  (ECF No. 96 at 4.)  Plaintiff replies that the Certificate of

5    Assessment is a record of assessment and is not the assessment itself.  The Certificate of Assessment

6    clearly shows that the assessment was made after examination on April 30, 2001.  Plaintiff asserts

7    that, even without the period for tolling during the pendency of the audit, the assessment was timely.

8    (ECF No. 99 at 8.)

9        Pursuant to 26 U.S.C. § 6501(a), a tax deficiency must generally be imposed within three

10   years after the return was filed.  Bakersfield Energy Partners, LP v. C.I.R., 568 F.3d 767, 768 (9th Cir.

11   2009).  "Official certificates, such as Form 4340, can constitute proof of the fact that the assessments

12   actually were made."  Hughes v. United States, 953 F.2d 531, 535 (9th Cir. 1992).  Plaintiff has

13   submitted a form 4340, Certificate of Assessment for the tax period ending December 31, 1997.

14   (ECF No. 88-15 at 9-14.)  This document shows that Defendants tax return for the 1997 tax year was

15   filed on May 14, 1998.  The penalty was assessed on April 30, 2001.   (Id. at 10.)  The Capriottis

16   offer no evidence to the contrary.

17       Defendants rely on Jones v. United States, 60 F.3d 584 (9th Cir 1995), to support their

18   argument that the Form 4340 is insufficient to establish that the assessment was made within the

19   limitations period.  In Jones, the IRS submitted three documents to prove that the defendants had

20   received notice of the assessment for the corporation.  The Jones court found that there was a genuine

21   issue of fact whether the assessments were made within the limitation period because there were

22   inconsistencies in the documents regarding the date of when the tax assessment was made; the amount

23   of the assessment was inconsistent with the claim before the court; and one of the forms did not

24   identify the party that was assessed.  Jones, 60 F.3d at 590.

25       In this instance, the Form 4340 states that the Capriotti are the parties against which the

26   deficiency is being assessed.  The date the assessment was made is stated on the form, and the

27   amounts of the assessment on the Form 4340 are the same as those set forth in the Declaration of

28   Dennis Stiffler. (ECF No. 88 at ¶ 9; ECF No. 88-15 at 10.)  "[O]fficial documents - such as IRS

forms - are probative evidence in and of themselves and, in the absence of contrary evidence, are sufficient to establish that notices and assessments were properly made." Hughes, 953 F.2d at 540. Plaintiff has presented sufficient evidence to show that the tax deficiency was imposed within the three years after the return was filed.  Since the assessment was timely, the assessment for the tax year ending December 31, 1997, is not barred by the limitation period.

2.      Whether Tax Assessments Lack Evidence of Income or Proper Tax Amounts

Plaintiff moves to reduce the tax assessments for the 1997 through 2002 tax years against the Capriottis to judgment.  (ECF No. 87 at 1.)  The Capriottis argue that there is no factual or legal support for the Assessments for the 1998 through 2002 tax years.  (ECF No. 96 at 9-11.)  Plaintiff contends that the tax periods were the subject of audit examination and deficiency procedures that have been shown by the declarations of Stiffler and Brooks.  Additionally, there are examples of the bank records relied on included in the government's motion that form the basis of the deficiency determinations.  (ECF No. 99 at 8.)

The government bears the initial burden of proof in an action to collect federal taxes.  In re Olshan, 356 F.3d 1078, 1084 (9th Cir. 2004).  "That burden is satisfied by the IRS's deficiency determinations and assessments for unpaid taxes, which are presumed correct so long as they are supported by minimal foundational facts."  In re Olshan, 356 F3d 3d at 1084 (internal quotations and citations omitted); United States v. Stonehill, 702 F.2d 1288, 1293 (9th Cir. 1983) ("a presumption of correctness attaches to the assessment, and its introduction establishes a prima facie case"); Rapp v. C.I.R., 774 F.2d 932, 934 (9th Cir. 1985) (commissioner's deficiency determination is entitled to presumption of correctness when supported by some substantive evidence that the taxpayer received unreported income).

"Once the Government has carried its initial burden of introducing some evidence linking the taxpayer with income-producing activity, the burden shifts to the taxpayer to rebut the presumption by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous."  Rapp, 774 F.2d at 934.  The taxpayer may shift the burden back to the IRS by showing that the determination is arbitrary, excessive, or without foundation.  In re Olshan, 356 F3d 3d at 1084.

1    During1996, the Capriottis placed all their property, including their business and real property,

2    in the BAR Trust, Trans Trust, CFCS Trust and the Family Trust.  The Capriottis opened checking

3    accounts in the names of the Oakview Trust, the Trans Trust, the CFCS Trust, and the BAR Trust,

4    with themselves as signatories.  (ECF No. 89-18 at 2 (Oakview Trust); ECF No. 89-21 at 2 (BAR

5    Trust); ECF No. 89-22 at 2 (Trans Trust)).  The funds in the various trust accounts came from the

6    business of Chris Capriotti and were passed through the BAR Trust to pay the Capriottis' personal

7    expenses.  At the completion of this process, all of the Capriottis' property was held in one or another

8    of the various trusts.  (ECF No. 89-1 at 35:14-20; ECF No. 89-2 at 21:19-23:9.)

9    The government has presented evidence that the Trans Trust was established to hold all

10   vehicles for the benefit of the family.  (ECF No. 89-1 at 32:14–22.)  The CFCS Trust was used to

11   isolate and organize business expenses.  (Id. at 33:14-34:6.)  The BAR Trust was to take any left over

12   income from the business and the Capriottis would draw from this account for their personal

13   expenses.  (Id. at 34:21-35:6.)  The Capriottis continued to run the business, and handle the money

14   for the trusts, as well as maintain and sign on the business checking account. (ECF No. 89-39 at 2-

15   38.)

16   The Capriottis under reported their income for 1997 and then completely stopped filing

17   income tax returns based upon their belief that the IRS could not collect taxes from them.  (ECF No.

18   89-1 at 60:4-67:18; ECF No. 2 at 39:7-19, 42:3-44:16; ECF No. 89-30; 89-31.)  Approximately six

19   months after their 1998 income tax liabilities were incurred, the Capriottis transferred their residence

20   into the irrevocable trust.  In response to IRS inquiries during the audit, the Capriottis set forth tax

21   avoidance arguments.  (ECF No. 89-30, 89-31, 89-38.)  During their depositions, Chris Capriotti

22   stated that they were not required to file income taxes because they are sovereign; and Carrie Capriotti

23   stated that no statute exists which imposes a tax on citizens living in the United States whose income

24   is derived from sources within the United States.  (ECF Nos. 89-1 at 65:8-19; 89-2 at 31:12-44:16.)

25   Defendants have not produced any evidence to create a genuine issue of material fact regarding the

26   determination that the Capriottis failed to report their income.

27   In conducting the examination of the Capriottis' income tax liability, Brooks obtained bank

28   records, including bank statements, deposit slips, deposited items, and cancelled checks.  Brooks used

the bank deposit method to determine taxable income because Defendants failed to provide additional documentation to support the treatment of the items of income as originally reported on the returns. (ECF No. 91 at ¶¶ 17-23.)   In using the bank deposit method to determine income, the  government must introduce evidence that the taxpayer 1) engaged in an income producing business during the years in question; 2) made regular deposits of funds into bank accounts; and 3) "an adequate and full investigation into those accounts was conducted to distinguish between income and non-income deposits."  United States v. Stone, 770 F.2d 842, 844 (9th Cir. 1985).

In this instance, the United States has submitted Certificates of Assessments, Payments, and Other Specified Matters, Form 4340, for the tax years at issue.  (ECF No. 88-13 though 88-15.) Plaintiff submits evidence that from 1996 until 2002, Defendant Chris Capriotti ran an air conditioning repair business, Capriotti Air Conditioning and Heating, out of his home.  Defendant Capriotti was the sole employee of the business.  (Carrie Capriotti Decl. 22:7-23:25, ECF No. 89-1.)

Because the Capriottis provided "extremely limited cooperation" Brooks sought information from third parties to determine their income for the subject tax years.  (ECF No. 91 at ¶ 17.)    In determining the Capriottis' tax liability, Brooks used the bank deposit method.  Brooks examined the bank records which showed that deposits had been made into the bank accounts. Upon examining the records, Brooks determined those items that had been reported as income to the trust, rather than to the Capriottis. (ECF No. 91 at ¶¶ 20-23, 38, 51.)  The evidence produced by Plaintiff shows that only those items that had been reported as income to the trusts and were determined to be income to the Capriottis was used to calculate the tax deficiency.  Upon examination of the tax returns filed, it was determined that the Capriottis' expenses and income had been inaccurately reported.  (ECF No. 91 at ¶¶ 24-51.)

For the tax years 2000 through 2002 the Capriottis tax liabilities were calculated using deficiency procedures pursuant to 26 U.S.C. §§ 6212-13.  (ECF No. 88 at ¶ 21.)  Once some substantive evidence is introduced, the factual foundation for the assessments is laid.  Stonehill, 702 F.2d at 1293.  Here, the government has supplied the necessary factual basis to show that the assessments are not utterly without foundation.  Id. at 1294.

While the Capriottis argue that the figures determined by the IRS are arbitrary, they fail to

1  introduce any evidence to call the calculations into question.  The Capriottis contend that the IRS has

2  not  shown the tax numbers come from any authorized source.  However, the amount of income tax

3  due would be calculated based upon the tax tables in effect at the time the taxes were due.  The

4  calculations for each year are set forth on a Form 4549A-CG.  (Decl. of Aaron Bailey, Exhibits 25,

5  26, 28, ECF No. 89).  Defendants argument that the tax assessment is without foundation is

6  unavailing.

7      Defendants cite United States v. Janis, 428 U.S. 433 (1976) for the proposition that this is a

8  "naked" assessment.  In Janis, the tax assessment was based upon bookmaking records seized

9  pursuant to a search warrant during a criminal investigation.  Janis, 428 U.S. at 436.   The search

10 warrant was later found to be invalid and the evidence was suppressed.  Id. at 439.  The court held

11 that the evidence that was illegally seized could not be used to determine a tax assessment.  Id. at 442.

12 In Janis, the assessment was "naked" because the evidence had been suppressed and there was

13 nothing to base the taxpayer's assessment on.  That is not the situation here, where the assessment

14 is based upon examination of the bank records of the Defendants.[14]

15     Lastly, during the March 6, 2013 hearing, the Court noted there was a difference in the interest

16 calculation applied to the assessment of Chris Capriotti and Carrie Capriotti for the 1998 tax year.

17 Plaintiff submitted a brief on March 13, 2013, explaining that the interest calculations for the

18 Capriottis were not the same because of estimated tax payments that were made by Chris Capriotti.

19 Because these payments were made by Chris Capriotti, no credit was applied to the tax due from

20 Carrie Capriotti.  (Decl. Dennis Stiffler ¶ 5, ECF No. 103-1.)  A separate credit was applied to Carrie

21 Capriotti's tax liability due to the proceeds of a lien.  (Id. at ¶ 6.)  The difference in the interest

22 calculation is due to the difference in these payments applied to the individual tax liabilities of the

23 Capriottis.  (Id. at ¶¶ 7, 8.)  Defendants have not produced any evidence to rebut the presumption of

24 correctness of the tax assessment.

25

26     [14]Defendants reliance on Cohen v. C.I.R., 266 F.2d 5 (9th Cir. 1959), is misplaced.  In Cohen, the taxpayer
   was unable to substantiate his deductions and the Commissioner sought to disallow them entirely, however the
27 appellate court found that the taxpayer was entitled to as close an approximation of the losses that can be made.
   Cohen, 266 F.2d at 543.  Cohen stands for the proposition that a tax court should allow a taxpayer some deductions
28 where he proves he is entitled to the deduction, but cannot prove the amount in full.  Sparkman, 509 F.3d at 1160.
   Similarly, Clinton Cotton Mills v. C.I.R., 78 F.2d 292 (4th Cir. 1935), does not assist Defendants because in Clinton
   Cotton Mills the issue was the depreciated value of the property used to determine the tax liability.

1        3.      Whether Penalties Are Supported by the Evidence

2        In assessing the tax liabilities of the Capriottis, Plaintiff has assessed penalties due to non-

3   payment. (ECF No. 100-2 at ¶¶ 19, 22, 25.)  Defendants contend that there is no evidence to support

4   the various penalties or other tax additions.  (ECF No. 96 at 11.)  "The IRS may assess penalties for

5   negligent or intentional disregard of income tax rules and regulations."  Zmuda, 731 F.2d at 1422

6   (citing 26 U.S.C. § 6653(a)).  Section 6662 of the Internal Revenue Code imposes a variety of

7   penalties for underpayment of taxes.  As a general rule, Section 6662(b)(1) imposes a 20 percent

8   penalty on any portion of an underpayment of tax that is attributable to negligence or disregard of the

9   rules or regulations, and Section 6662(b)(3) applies the penalty to substantial valuation misstatements.

10  The penalty is increased to 40 percent in the case of gross valuation misstatements.  26 U.S.C. §

11  6662(h)(1).  The determination of a penalty by the commissioner is presumed correct and the taxpayer

12  has the burden of proving that any underpayment was not the result of negligence or disregard.

13  Sparkman, 509 F.3d at 1161; Pahl v. C.I.R., 150 F.3d 1124, 1131 (9th Cir. 1998).

14       Plaintiff has presented evidence that the Capriottis placed all their business assets into a trust

15  and then failed to file income tax returns.  The individual involved in a tax shelter has a duty to make

16  a reasonable inquiry before entering into the scheme.  Zumda, 731 F.2d at 1422.  In this instance,

17  Defendants have not produced any evidence to rebut the presumption that the penalties have been

18  correctly assessed.

19       Defendants also argue that 26 U.S.C. § 7491(c) puts the burden of production on the

20  government in regards to any tax claims.  Section 7491(a)(1) shifts the burden to the government

21  when "a taxpayer introduces credible evidence with respect to any factual issue relevant to

22  ascertaining the liability of the taxpayer for any tax imposed. . . ."  This section only applies where

23  the taxpayer has complied with the requirements to substantiate any item, has maintained all records

24  as required, and has cooperated with the reasonable requests of the investigation.  26 U.S.C. §

25  7491(a)(2).  In this instance the burden did not shift because Defendants Chris and Carrie Capriotti

26  did not show that they kept records or cooperated with the investigation.

27       Here, based on the foregoing, the Court finds that no genuine issue of material fact exists and

28  Plaintiff's motion for summary judgment on the tax assessments for the 1997 through 2002 tax years

against the Capriottis is granted.  The Court shall next consider whether the Trusts were sham trusts or whether the transfer of the residence was a fraudulent transfer.

### B.     Whether Trusts are a Sham or Fraudulent Transfer

Next, Plaintiff contends that the Capriottis transferred all their property into various trusts that they controlled and the trusts were shams created to avoid tax liability.  In support of the argument that the trusts were shams, Plaintiff contends that checking accounts were opened in the name of the trusts and the Capriottis were signatories.  The money in the trust accounts came from Chris Capriotti's personal business activities and passed through the BAR Trust to pay their personal expenses.  (ECF No. 87-2 at 7.)  The Capriottis argue that the Government has failed to present evidence to prove their theories of fraudulent transfer, sham, nominee, or alter ego.[15]  (ECF No. 95 at 4.)  Plaintiff replies that the constructive fraud tests under sections 3439.04(b) and 3439.05 have been met.  (ECF No. 99 at 3.)

GAS moves for summary judgment asserting that the government has provided no evidence that GAS is a nominee or alter ego for the trusts or the Capriottis.  (Oakview Trust's and the Chris and Carrie Capriotti Family Trust's by GBS as Trustee Mot. For Partial Summary Judgment 3, ECF No. 92.)  Plaintiff  argues that these trusts were set up as sham trusts to avoid tax liability; and the trusts should be disregarded for federal tax purposes.  (ECF No. 87-2 at 6.)

Initially, Plaintiff argues that similar trusts to those at issue here have been found to be illegitimate tax schemes, citing United States v. Estate Preservation Services, 202 F.3d 1093 (9th Cir. 2000); and United States v. Smith, No. 1:10-cv-01193-OWW-JLT, 2011 WL 2960872 (E.D.Cal. July 19, 2011).  However, Plaintiff has not set forth sufficient facts to show that the alleged trust scheme here is similar to those addressed in either Estate Preservation Services or Smith.

### 1.     Legal Standard

"It has long been the law that a transaction with no economic effects, in which the underlying documents are a device to conceal its true purpose, does not control the incidence of taxes." Sparkman v. C.I.R., 509 F.3d 1149, 1154-55 (9th Cir. 2007).  A sham transaction is one where there

---

[15] The Court notes that Plaintiff is not moving for summary judgment on the claim that the Trust Defendants are alter egos of the Capriottis.

1    is no economic effect other than to create income tax losses.  <u>Neely v. United States</u>, 775 F.2d 1092,

2    1094 (9th Cir. 1985).  The economic substance formula may be used to determine whether a family

3    trust is valid and whether a trust is a grantor trust for tax purposes.   <u>Zumda v. C.I.R.</u>, 731 F.2d 1417,

4    1421 (9th Cir. 1984).

5    Even where the taxpayer structures a transaction to satisfy the formal requirements of the

6    Internal Revenue Code, the legal effects of the transaction will be avoided if the sole purpose is to

7    avoid taxation.  <u>Neely</u>, 775 F.2d at 1094.  Sham transactions that have no legal effect other than to

8    avoid income tax liability cannot be recognized for tax purposes.  <u>Zumda</u>, 731 F.2d at 1421.  "A trust

9    arrangement may not be used to turn a family's personal activities into trust activities, with the family

10   expenses becoming expenses of trust administration."  <u>Neely</u>, at 1094.  The grantor of a trust who

11   retains certain powers of disposition without the approval or consent of an adverse party is treated as

12   the owner of the trust.  <u>Id.</u> at 1094.

13       2.       Whether the Claim Against the Capriotti Family Trust is Moot

14   Defendants oppose Plaintiff's motion for summary judgment against Family Trust on the

15   ground that, since Family Trust is a revocable trust that is not out of the reach of creditors, Plaintiff's

16   claims against it are moot.  (ECF No. 95 at 6-7.)  In this instance, the trust transfer deed on the

17   property at issue was filed on October 14, 1996,  transferring the property into Family Trust for no

18   consideration.  The trustees at the time were the Capriottis.  (Decl. of Stiffler, Exhibit 10, Transfer

19   Deed of Trust, ECF No. 89-10.)  On June 28, 1999, the property was transferred from Family Trust

20   to Oakview Trust.  (Decl. of Stiffler, Exhibit 11, Transfer Deed of Trust, ECF No. 89-11.)

21   Oakview Trust and Family Trust argue that while the property was held in the Family Trust

22   the government would have been able to take the property in satisfaction for the tax lien.  (ECF No.

23   95 at 6-7.)  It was not until after the property was transferred to Oakview Trust, an irrevocable trust,

24   that the fraudulent transfer allegations become relevant.  (<u>Id.</u> at 8.)  Defendants concede that the

25   existence of Family Trust does not preclude Plaintiff from foreclosing on the property.  However,

26   Plaintiff's claim is that Family Trust was established as a sham trust and, therefore, the transfer from

27   Family Trust to Oakview Trust was not valid. Since the issue of whether the transfer from Family

28   Trust to Oakview Trust was a fraudulent transfer is to be decided, the claims against Family Trust are

1    not moot.  The Court shall next consider Plaintiff's claim that the Capriottis created sham trusts.

2          3.          Whether Oakview Trust and Family Trust are Sham Trusts

3          Plaintiff contends that Oakview Trust and Family Trust are sham trusts because the Capriottis

4    maintained control over the assets, continued to live on the property and carry on the family business

5    as prior to the transfers, and the trusts should be disregarded for tax purposes.  (ECF No. 87-2 at 6.)

6          "[I]f a transaction or entity has no valid, non-tax purpose, nominally uses another person, or

7    entity as a conduit through which to pass title, or brings about no real change in the economic

8    relations of the taxpayers to the income in question, the Commissioner has the authority to find that

9    the transaction or entity lacks economic substance and disregard it for tax purposes."  Richardson v.

10   C.I.R., 509 F.3d 736, 741 (6th Cir. 2007) (internal punctuation and citations omitted).

11         The structure of the trusts set up by the Capriottis in this action are consistent with trusts that

12   the IRS has determined to be abusive trust arrangements.  Internal Revenue Notice 97-24 identifies

13   five examples of abusive trust arrangements, and at least three of them are present here in some form,

14   the business trust, the equipment or service trust, and the family residence trust.  I.R.S. Notice 97-24,

15   1997-16I.R.B. 6, 1997 WL 187852.  While Notice 97-24 purports that these type of trusts generally

16   are set up with the assets being rented back to the owners, in this instance, all the assets were placed

17   in the trust and there was no difference in the way the assets were handled prior to the trust being

18   established.

19         The Court shall first consider Plaintiff's argument that Family Trust and Oakview Trust are

20   a sham because the transactions lack economic substance.  In determining whether there is economic

21   substance to a transaction the court employs a four factor test:

22              (1) whether the taxpayer's relationship to the transferred property
                differed materially before and after the trust's creation; (2) whether the
23              trust had an independent trustee; (3) whether an economic interest
                passed to other trust beneficiaries; and (4) whether the taxpayer
24              respected the restrictions placed on the trust's operation as set forth in
                the trust documents.

25   Sparkman, 509 F.3d at 1155 (quoting Markosian v. Comm'r, 73 T.C. 1235, 1243-44, 1980 WL 4562

26   (1980)).

27   ///

28   ///

### a. Whether the taxpayer's relationship to the transferred property differed materially before and after the trust's creation

Plaintiff argues that after the transfer of the assets into the trusts nothing changed in the way the assets were handled. The Capriottis continued to live in the residence; Chris Capriotti continued to run his business as he had prior to the transfer into either of the trusts; and the Capriottis continued to exercise dominion and control over all the assets that were placed in the trusts. (ECF No. 87-2 at 6-7.) While the Capriottis concede that they continued to live on, maintain, and paid all expenses for the trust property, they argue that these are the same obligations that are normally taken by those who give up ownership of the property but maintain a life interest in the property. (ECF No. 95 at 9.) Since Family Trust was a revocable trust, the trust gave no income tax advantages to the Capriottis. *See* George Gleason Bogert & George Taylor Bogert, Trusts & Trustees § 233 (Westlaw 2013) ("a revocable trust yields no income tax advantages during the settlor's lifetime" and "all trust income is fully taxable to the settlors").

Defendants appear to argue that the Court can only consider the Oakview Trust or Family Trust which held the residential property, and not the Trans Trust, CFCS Trust, and Bar Trust into which the Capriottis placed all the business assets and through which all income flowed. However, the Court finds the structure of the various trusts to be relevant to the issues to be addressed and such evidence will be considered in determining whether the Oakview Trust and Family Trust were established for tax avoidance purposes.

After the Capriottis placed all their assets in trust, they continued to live on the property, run the business, and handle the money for the trusts, as well as maintain and sign on the business checking account. (ECF No. 89-39 at 2-38.) The Contractual Trust documents establishing the Oakview Trust, dated September 11, 1996, state that:

> Chris and Carrie Capriotti shall be retained as managers of *The Oak View Trust*, in order to more fully protect the Trust Assets and achieve the purpose of the Trust, so long as they are competent to occupy such a capacity. . . .

(ECF No. 89-10 at ¶ 9.3.) After the property was placed into trust nothing changed in the way that the Capriottis' assets were handled. Since nothing changed in the way the Capriottis assets were handled, the taxpayers relationship with the assets were not materially different than they had been

prior to the creation of the Family or Oakview Trusts.  This factor weighs in favor of finding the trust was a sham trust.

**b.      Whether the trust had an independent trustee**

Plaintiff argues that there was no independent trustee because the Capriottis were managers of Oakview Trust and the third party trustees did not take an active role in management of the trust, leaving that to the Capriottis.  (ECF No. 87-2 at 8.)  Defendants reply that Chris Capriotti was not a protector of the trust and there is no evidence presented that Chris Capriotti was ever in a position of trustee of GBS.  (ECF No. 95 at 10.)

The Family Trust clearly did not have an independent trustee. (ECF No. 89-11 at 2; ECF No. 88-10 at 2.)  The Capriottis were named as trustees and during their depositions could name no other individuals that acted as trustee of this trust during the time period relevant to the claims here.  (ECF No. 89-1 at 15:2-8; ECF No. 89-2 at 16:1-17:9.)

The trust documents for the Oakview Trust clearly set forth that the protector of the trust has the power to remove any trustee, and the trust identifies the protector of the trust as Dan Young in 2003. (ECF No. 89-10 at ¶ 20.1.)  In his deposition, Defendant Chris Capriotti stated that he was a protector of the Trust during the time period that GBS was the trustee; and has been a signator on the checking account.  If there was a problem with the trust or personnel, Defendant Capriotti stated that he could step in and fire the individual and appoint a different trustee.  (ECF No. 89-2 at 24:2-25:23.) Defendants argue that this was a misunderstanding on the part of Defendant Capriotti.  However, Defendants have not presented any evidence to show that Chris Capriotti was not the protector of the trust during the time period at issue here.

Plaintiff argues that, although the trust documents named trustees other than the Capriottis, these Trustees had no effective power and no access to the necessary information to exercise power if they wanted to.   Prior to GBS becoming trustee, Mr. Kistler and Mr. Harvey were the trustees for Oakview Trust.  Plaintiff presents evidence that John Harvey and Kurt Kistler, the latter operating under the d/b/a name "KKP," were the trustees indicated on the grant deed purporting to transfer title from the Family Trust to Oakview Trust, and John Harvey is identified as trustee in Oakview Trust documents.  (ECF No. 89-6 at 9:17-22; ECF No. 89-11 at 4, ECF No. 89-15 at 6.)  Mr. Kistler, stated

1  he "never handled any money," and was not aware of any sale purportedly moving the Oak Flat Lane
2  property into the name of Oakview Trust.  Rather, he "just changed" names on the documents.  (ECF
3  No. 89-6 at 7:12-18, 22:1-21.)  According to Mr. Kistler, as a trustee of Oakview Trust, he had no
4  oversight or control over the property in trust, stating, "[t]he only thing I knew was that the property
5  was now under my name and another trustee's name."  (ECF No. 89-6 at 22:14-21.)  Mr. Kistler
6  resigned immediately upon becoming aware that the IRS was investigating Oakview Trust, asserting
7  that he "wasn't doing anything" with respect to the trusts.  (ECF No. 89-6 at 9:14-10:6.)

8  Mr. Harvey did not take an "active roll" in the management of the trust or perform any actual
9  supervision over the property purportedly held by the trust.  (ECF No. 89-5 at 11:12-24, 12:3-9,
10  14:15-19.)  Oakview Trust "does no business, has no income[,]" holds no money, collects no rent
11  from the Capriottis, does not pay bills related to the maintenance of trust property or pay for services
12  related to the property.  (ECF No. 89-3 at 29:4-7; 30:4-7; 31:12:20; 32:5-23.)

13  Plaintiff has presented evidence that at the time period relevant to the transactions here, named
14  trustees, Kistler and Harvey had no roll in administering the trust or its assets.  The Capriottis
15  managed the property and were signatories on the checking accounts.  Defendants have not produced
16  any evidence that at the time of the transfer of the property into the Oakview Trust there was an
17  independent trustee overseeing the trust.  This factor weighs in favor of finding that the trust was a
18  sham trust.

19  **c.      Whether an economic interest passed to other beneficiaries**

20  The trust document provided in this action names the beneficiaries of the Oakview Trust as
21  Brent Capriotti, Amanda Capriotti, and Ryan Capriotti.  This trust document is dated April 10, 2009.
22  (*See* ECF No. 89-10 at 4.)   During their depositions, the Capriottis testified that the Oakview Trust
23  was established for estate planning purposes and the beneficiaries of the trust were their children.
24  Because the Oakview Trust was an irrevocable trust, an economic interest would pass to the named
25  beneficiaries.  This factor weighs against finding that the trust was a sham trust.

26  **d.      Whether the taxpayer respected the restrictions placed on the trust's operation as set forth in the trust documents**

27  Finally, the Capriottis did not respect the trust documents which required an independent
28  trustee to administer the trust.  Chris Capriotti stated he was the protector of the trust and the named

trustees had no meaningful role in the administration of the trust.  Since there was no independent trustee overseeing the administration of the trust this factor weighs in favor of finding the trust was a sham trust.

### e. Conclusion

Upon considering the factors to determine if the Oakview Trust was a sham trust, the Court finds that because an economic interest passed to the named beneficiaries of the Oakview Trust a genuine issue of material fact exists.  Plaintiff's motion for summary judgment on the ground that the trust is a sham trust is denied.  However, this does not end our inquiry, because if the transfer of the property was fraudulent, Plaintiff would be able to foreclose on the subject property regardless of the finding that a material issue of fact exists as to whether the trust was a sham.  The Court shall next address whether the transfer of the property into the Oakview Trust was a fraudulent transfer.

### 4. Whether the Transfer to Oakview Trust Was a Fraudulent Transfer

Plaintiff contends that the transfer into the Oakview Trust should be disregarded because it was a fraudulent transfer under California law.  Plaintiff moves for summary judgment on the theory of constructive fraudulent intent under California Civil Code §§ 3439.04(a)(2)(B) and 3439.05.[16]

"A fraudulent conveyance cannot succeed simply because the defrauders create an intricate web of entities within which to effect further transfers of the relevant properties."  Grove v. Stanko, 997 F2d 413, 417 (8th Cir. 1992).

> As a general rule, any provision in a transfer of property by a person indebted at the time whereby he or she reserves or secures a benefit to himself, herself, or family member, at the expense of creditors, is unless assented to by them, deemed to be evidence of fraud either actual or constructive, and renders the transfer liable to be avoided at the instance of such creditors.  The rule may apply regardless of any actual intent to defraud, and it is immaterial whether or not the benefit reserved is great or small. . . .However, to render the transfer fraudulent, there must be some reservation of an interest in the property itself or some reservation inconsistent with a genuine transfer.

[16]During the March 6, 2013 hearing, Defendants argued that subjective intent was required to prove that a fraudulent transfer had occurred.  The Court granted the parties an opportunity to brief the issue of whether subjective intent was a requirement for a constructive fraudulent transfer.  In their supplemental briefing, Defendants acknowledge that actual intent or constructive intent apply depending on the cause of action pled under the CUFTA. (ECF No. 104 at 2.) Although Defendants argue that Plaintiff has failed to meet the elements of a fraudulent transfer under California Civil Code section 3439.04(a) which requires subjective intent to defraud, Plaintiff's motion is brought alleging constructive intent under sections 3439.04(a)(2)(B) and 3439.05.

37 CJS Fraudulent Conveyances § 138.   Under the California Uniform Fraudulent Transfer Act ("CUFTA"), the creditor has the burden of proving the elements of a fraudulent conveyance by a preponderance of the evidence.  Whitehouse v. Six Corp., 40 Cal.App.4th 527, 530 (1995).  Once the creditor has shown that the conveyance is presumptively fraudulent, the burden shifts to the party defending the transfer.  Whitehouse, 40 Cal. App.4th at 533.

A fraudulent transfer under the CUFTA is "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." Kirkeby v. Superior Court of Orange County, 33 Cal.4th 642, 648 (2004); see Cal.Civ.Code §§ 3439 et seq.  There are two types of constructive fraud under the CUFTA.  First, "[a] transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor."  Filip v. Bucurenciu, 29 Cal.App.4th 825, 829 (2005) (internal punctuation omitted) (citing Cal.Civ.Code § 3439.04 (a)).   Under section 3439.04 there must be "actual intent to hinder, delay, or defraud any creditor of the debtor."  Cal.Civ.Code § 3439.04(a).  However, under section 3439.04(a)(2)(b), California recognizes a theory of constructive intent where the party "reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

Second, without actual fraudulent intent, a transfer may be constructively fraudulent where the debtor does not receive a reasonably equivalent value and it is made when the debtor is insolvent or which renders the debtor insolvent.  Cal.Civ.Code. § 3439.05; Mejia v. Reed, 31 Cal.4th 657, 664 (2003); In re Turner, 335 B.R. 140, 145 (Bnkr.N.D.Cal. 2005).  "A debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets."  Cal. Civ. Code § 3439.02(a).

In this instance, the Capriottis have stated that Oakview Trust was created and the property was transferred for estate planning purposes raising a genuine issue of material fact as to actual intent. Since a genuine issue of material fact exists as to whether there was actual intent to defraud, and the Court finds that the transfer was fraudulent under section 3439.05, as discussed below, the Court declines to consider whether there was constructive intent under section 3439.04(a)(2)(B).  The Court

will now consider whether the transfer was transfer was fraudulent under section 3439.05.  Under section 3439.05, the Court considers: 1) whether the Capriottis received a reasonably equivalent value for the transfer of the residence into the Oakview Trust; and 2) whether the transfer of the property into the Oakview Trust left the Capriottis insolvent.

### a.    Whether the Capriottis Received a Reasonably Equivalent Value for Transfer

Here, Plaintiff argues that the Capriottis did not receive any equivalent value upon the transfer of the property into the Family Trust or the Oakview Trust.  Defendants contend that they maintained a life estate in consideration for the transfer of the property.  Plaintiff replies that the life estate was not recorded on the deed and, therefore, the argument that the life estates was given in consideration is precluded by the statute of frauds and parol evidence rule.[17]

While Defendants argue that the life estate is consideration for the transfer of the property into the trusts, the issue in deciding whether the transfer was fraudulent is whether the transfer was for "reasonably equivalent value."  The legislature has not defined the term reasonably equivalent value. In re 3dfx Interactive, Inc., 389 B.R. 842, 863 (Bnkr.N.D.Cal. 2008).  The question on whether the transfer is for reasonably equivalent value is largely a question of fact in which the trier of fact is given considerable latitude and must analyze all the circumstances surrounding the conveyance in question.  In re Kemmer, 265 B.R. 224, 232 (Bnkr.E.D.Cal. 2001).  "Because the policy behind fraudulent conveyance law is to preserve assets of the estate, reasonably equivalent value is determined from the standpoint of the estate's creditors, it is not determined from the defendant's perspective."  In re 3dfx Interactive, Inc., 389 B.R. at 863.

The California Supreme Court has addressed the issue of "substantial equivalent value" in determining whether a change of ownership has occurred for purposes of assessing property taxes. "Revocable living trusts are merely a substitute for a will."  Steinhart v. County of Los Angeles, 47

---

[17] The statute of frauds requires that an agreement that creates an interest in property must be evidenced by a writing to be valid.  Cal.Civ.Code § 1624(a)(3); Secrest v. Security Nat. Mortg. Loan Trust 2002-2, 167 Cal.App.4th 544, 552 (2008).  The transfer of a life estate falls within the operation of the statute of frauds and requires a writing evincing the agreement to transfer the interest in real property.  Cal.Civ.Code § 1971; Reagh v. Kelley, 10 Cal.App.3d 1082, 1090 (1970).  Although Plaintiff argues that the deed does not specify that the Capriottis have a life estate, it is not the deed, but the trust that created the life estate.  It would be for the parties to raise the statute of frauds as a defense if the life estate was in question.  In re Circle K Corp., 127 F.3d 904, 908 (9th Cir. 1997).

Cal.4th 1298, 1322 (2010).  When property is transferred into a revocable trust, such as the Family Trust, the creator of the trust retains the ownership in the property and the retained interest is considered to be substantially equivalent value.  Steinhart, 47 Cal.4th at 1322.  Therefore, at the time of the transfer into the Family Trust the Capriottis retained the entire equitable interest in the estate and, under California law, were regarded as the real owners of the residence.

At the time that a trust becomes irrevocable, the entire equitable estate transfers to the beneficiaries of the trust.  Steinhart, 47 Cal.4th at 1320.  "A conveyance of a fee simple with a reservation of a life estate is a common means for parents to convey property to children."  Pacific Southwest Realty Co. v. County of Los Angeles, 1 Cal.4th 155, 170 (1991).   A life estate is a freehold estate of questionable value because it is "subject to complete defeasance at an unknown time."  Pacific Southwest Realty Co., 1 Cal.4th at 165.  In dicta, the California Supreme Court noted that where the grantor of the trust retains a portion of the equitable estate, such as the life estate at issue here, the divided interest would not approach the value of the fee interest transferred.  Id. at 165; cf. Phelps v. Orange County Assessment Appeals Bd. No. 1, 187 Cal.App.4th 653, 667 (2010) (retention of lifetime interest in income from trust held real property meets the value equivalency prong).

By placing the residence in Oakview Trust, the Capriottis conveyed the entire value of the property, while retaining only a portion of the equitable interest, a life estate.  In their supplemental reply, the Trust Defendants argue that the Capriottis believed they received substantially equivalent value for the transfer, however this is insufficient to create a genuine issue of material fact. Defendants argue that the life estate was consideration for the transfer of the property into the trust. While a life estate is consideration, the question here is whether the transfer was for "reasonably equivalent value."  Defendants  have not produced any evidence regarding the value of the live estate to create a genuine issue of material fact as to the "reasonably equivalent value" of the transfer under California law.  Therefore, there are no genuine issues of material fact as to this element and at least partial summary judgment is appropriate.

b.      **Whether the Transfer of the Residence Left the Capriottis Insolvent**

To determine whether the transferor was insolvent at the time of the transfer, the court

considers the value of the debts compared to the debtor's assets.  Mejia, 31 Cal.4th at 670.  In this instance, the Capriottis have testified that they retained no assets after they transferred all their property into trust.  At the time of the transfer into the Oakview Trust, the Capriottis tax liability for 1997 was $114,222, and their tax liability for 1998 was $460,642.  Further, the timing of the transfer into the Family Trust and Oakview Trust supports Plaintiff's argument that this transfer was fraudulent.

The property was originally transferred to the Family Trust on October 14, 1996.  Defendants concede that, were the property still in this trust, it would not be protected.  Oakview Trust and Family Trust argue that the government has not shown that the Capriottis were insolvent.  (Oakview Trust's and the Chris and Carrie Capriotti Family Trust's by Global Administrative Services as Trustee Brief Re: Issue of Intent Under CA UFTA 5, ECF No. 104.)  "[T]ax obligations, though unassessed, are deemed obligations due and owing at the close of the taxable year."  Edelson v. C.I.R., 829 F.2d 828, 834 (9th Cir. 1987).  While the Capriottis contend that the Government cannot argue that the transfers left the Capriottis insolvent and then attribute the income from the trusts to them, the Court fails to be persuaded by this argument.  The question in this instance is whether the transfer of the property into the Oakview Trust left the Capriottis insolvent.

Defendants argue that the Government has not shown that the Capriottis were insolvent at the time of the transfer.  However, the evidence presented by the Government is sufficient to show that the sum of the Capriottis debts was greater than all of the Capriottis' assets.  Cal. Civ. Code § 3439.02(a).  At the time of the transfer into the Oakview Trust, the Capriottis' owed approximately $475,000 in federal income taxes, and according to the Capriottis they had no assets because all their assets were held in trust.[18]  (ECF No. 89-1 at 35:14-20; ECF No. 89-2 at 40:15-41:10.)  Defendants also claim that the Government's argument that the Capriottis had sufficient assets to pay their property related expenses contradicts the position that the Capriottis were insolvent.  However, the evidence before the Court is that the Capriottis did not have sufficient assets to meet their tax obligations, and therefore the transfer of their residence into the Oakview Trust left the Capriottis

---

[18]Although not necessary to finding the Capriottis to be insolvent, the Court also notes that the Capriottis owed state taxes in the amount of $12,761 for the 1996 tax year.  (ECF No. 7 at 7.)  Carrie Capriotti owed state taxes of $44,065 and Chris Capriotti owed state taxes of $44,065 for the 1998 tax year.  (Id. at 9, 11.)

1  insolvent. *See* Cal. Civ. Code § 3439.02(a).

2      Defendant GAS argues that the facts in United States v. Secapure, No. 3:07-cv-1050 THE,

3  2008 WL 820719 (N.D.Cal. March 26, 2008), are similar to those here and the court should consider

4  the other factors and find that the government has failed to carry its burden.  In Secapure, the

5  taxpayers incurred a tax debt and they transferred their home to their son as a gift.  Id. at *1.  The

6  government sought summary judgment to reduce the tax assessment to judgment, find the conveyance

7  was fraudulent, and foreclose on the tax liens.  Id. at 2.  The Secapure court found that the

8  government had not proved that the taxpayer was insolvent, because all that was presented was a

9  hearing transcript in which Mr. Secapure stated he could not pay his bills, and he knew he owed the

10 IRS money.  The taxpayer testified that he was not insolvent as his wife was employed, he had a

11 pension, and he owned a business and other property.  Id. at *5.  The court found that without more

12 the government had not met its burden to show that the transfer was fraudulent.  Id. at *6.

13      This action is distinguishable from Secapure as the government has submitted evidence to

14 show that the Capriottis transferred their residence, business, and all their vehicles to the various

15 trusts.  By transferring all their assets to these trusts, the Capriottis retained no assets to meet their tax

16 obligations.  Further, unlike Secapure where the debtor testified that he had income and owned a

17 business and property, Defendants have not presented any evidence that they had sufficient assets to

18 meet their obligations.  The government becomes a creditor when the tax year ends.  Id. at *7.  The

19 Capriottis under reported their income for the 1996 and 1997 tax years and then failed to file a return

20 for the 1998 tax year.  The residence was placed in Oakview Trust in June of 1999, approximately

21 six months after they incurred the full tax liability for the 1998 tax year, and after the residence was

22 transferred the Capriottis did not have any assets.  The Capriottis have not presented any evidence to

23 refute Plaintiff's evidence that the transfer of the residence to the Oakview Trust left them insolvent;

24 and summary judgment is also appropriate on this element.

25      Plaintiff has presented evidence to show that the Capriottis transferred their residence into the

26 Oakview Trust without receiving a reasonably equivalent value for the transfer; and this transfer left

27 the Capriottis insolvent.  The Capriottis have presented no evidence to the contrary.  As noted above,

28 considering the elements under section 3439.05, no genuine issue of material fact exists and the

transfer of the property is deemed fraudulent.  Plaintiff's motion for summary judgment on the grounds the transfer was fraudulent under California Civil Code section 3439.05 is granted.

### C.     Whether Oakview Trust is a Nominee

Finally, both parties seek summary judgment on the issue of whether a defendant is a nominee of the taxpayers.  Plaintiff asserts that Oakview Trust and Family Trust are nominees of the Capriottis. Defendant GAS brings a partial motion for summary judgment on the ground that Plaintiff has not provided any documentary or testimonial evidence that GAS is a nominee or alter ego of the Capriottis or the trusts.[19]  (ECF No. 92 at 4.)  Plaintiff contends that Defendant GAS appears to misapprehend the issues involved in this action.  The Court agrees with Plaintiff that whether Defendant GAS is an entity that may act as a trustee is irrelevant to the claims at issue here.

GAS is in court because it is alleged to be holding the fraudulently transferred property of the Capriottis.  In an action to set aside a fraudulent conveyance, the transferee is a necessary party to the action within the meaning of Federal Rule of Civil Procedure 19 because the action to set aside the transfer necessarily impacts the transferee's interest in the property received.  37 Am.Jur.2d Fraudulent Conveyances and Transfers § 166 ("A trustee, holding legal title to property for the use of others, is usually considered a necessary party in a suit attacking a fraudulent conveyance, on the ground that the court can do no more than act on the legal title of the parties before it.")

The issue the Court has considered here is whether the transfer was valid at the time the incidents alleged in this action occurred, which was prior to 2002.  In 2003, GBS became trustee of the Family Trust and Oakview Trust.  Defendant GAS did not become the trustee of Oakview Trust until August 3, 2009.  GAS admits that it currently holds title to the property upon which the government seeks to foreclose in this action.  The CUFTA allows the defrauded creditor to reach into the hands of a transferee.  Mejia, 31 Cal.4th at 663.  GAS is properly joined in this action as they hold title to the property at issue here.

A third party is a nominee where "the taxpayer has engaged in a legal fiction by placing legal title to the property in the hands of a third party while actually retaining some or all of the benefits

_____

[19]To the extent that Defendant raises arguments related to the motion for a protective order that was pending at the time the motions for summary judgment was filed, those issues have been addressed in the section of this order addressing evidentiary objections.

1    of true ownership." <u>Holman v. United States</u>, 505 F.3d 1060, 1065 (10th Cir. 2007).  In determining

2    if Oakview Trust is a nominee of the Capriottis, the court looks to state law.  <u>United States v. Craft</u>,

3    535 U.S. 274, 278 (2002).  While California recognizes nominee ownership, the Supreme Court has

4    not addressed the factors to be considered under state law to determine nominee status.  <u>Leeds LP</u>,

5    2010 WL 3070349, at *4.  Where the highest court in the state has not decided an issue, the federal

6    court is to predict how the state court would decide it.  <u>Giles v. General Motors Acceptance Corp.</u>,

7    494 F.3d 865, 872 (9th Cir. 2007).  The court can consider intermediate appellate court decisions,

8    decisions for other jurisdictions, statutes, treatises, and restatements as guidance.  <u>Eichacker v. Paul</u>

9    <u>Revere Life Ins. Co.</u>, 354 F.3d 1142, 1145 (9th Cir. 2004).

10          Courts throughout the Ninth Circuit rely on a six factor test to determine if property is held

11   by a nominee.  <u>United States v. Jones</u>, No. 2:09-cv-02792-SACV (ANx), 2012 WL 569366, *11 (Feb.

12   17, 2012).  The Ninth Circuit has affirmed the use of this six factor test to determine if property is

13   held as a nominee.  <u>Leeds LP v. United States</u>, 807 F.Supp.2d 946, 966 (S.D.Cal. 2011).  Given the

14   wide spread use of and the Ninth Circuit's affirming the use of the six factor test, the Court finds that

15   the California Supreme Court would likely adopt this test in determining if property is held by a

16   nominee.  The relevant factors to be considered are:

17          (a) No consideration or inadequate consideration paid by the
             nominee;
18          (b) Property placed in name of nominee in anticipation of suit or
             occurrence of liabilities while transferor continues to exercise control
19           over the property;
             (c) Close relationship between transferor and the nominee;
20          (d) Failure to record the conveyance;
             (e) Retention of possession by the transferor; and
21          (f) Continued enjoyment by the transferor of benefits of the
             transferred property.
22

23   <u>Leeds</u> 807 F.Supp.2d at 966.  The court looks to the totality of the circumstances in the nominee

24   analysis and the presence or absence of a single factor is not dispositive.  <u>Id.</u>

25          As discussed above, the Capriottis transferred their residence into the trust in exchange for

26   a life estate.  The reservation of the life estate was inadequate consideration for the transfer of the

27   property.

28          While Defendant GAS argues that there is no indication that the property was placed into the

trust when the Capriottis were anticipating litigation, the evidence presented by Plaintiff in this action demonstrates otherwise.  The Capriottis under reported their income and then completely stopped filing income tax forms based upon their belief that the IRS could not collect taxes from them. (ECF No. 89-1 at 60:4-67:18; ECF No. 2 at 39:7-19, 42:3-44:16; ECF No. 89-30; 89-31.)  Approximately six months after their 1998 income tax liabilities were incurred, the Capriottis transferred their residence into the irrevocable trust.

In response to IRS inquiries during the audit of this action, the Capriottis stated tax avoidance arguments. (ECF No. 89-30, 89-31, 89-38.)  Further, during their depositions, Chris Capriotti stated that they were not required to file income taxes because they are sovereign; and Carrie Capriotti stated that no statute exists which imposes a tax on citizens living in the United States whose income is derived from sources within the United States. (ECF Nos. 89-1 at 65:8-19; 89-2 at 31:12-44:16.)  The evidence shows that the Capriottis stopped paying income tax due to their tax avoidance beliefs.  Since the Capriottis had been paying taxes up to that time, the Court fails to be persuaded by Defendants argument that the Capriottis could not be anticipating that the Internal Revenue Service would attempt to collect the taxes due.  This is similar to <u>Secapure</u> where the court found that the timing of the transfer was suspect.  Even thought there was no direct evidence that the transfer was in anticipation of tax liability, given the close relationship of the parties involved in the transfer, the fact that the taxpayers retained possession of the property and enjoyed the benefits of the property for many years, the court found that the son was a nominee.   <u>Secapure</u>, 2008 WL 820719, at *8.

At the time that the residence was transferred into the trust, there was a close relationship between the transferror and the nominee as there were no independent trustees, and the Capriottis continued to handle all assets as they had been prior to the transfer.  Additionally, the Capriottis have continued to retain possession of the residence and enjoyed the benefits of the transferred property during the entire time it has been placed in the trust.

The Court finds that weighing the factors, there is no genuine issue of material fact and at the time of the transfer Oakview Trust was a nominee of the Capriottis.  Accordingly, Defendant GSA's motion for summary adjudication is denied and Plaintiff's motion for summary judgment on the claim that Oakview Trust is a nominee of the Capriottis is granted.

### D.    Foreclosure of Federal Tax Liens

Plaintiff seeks to foreclose on the tax liens for the Capriottis' individual tax liabilities for tax years 1997 through and including 2002 and seeks an order for a judicial sale pursuant to 26 U.S.C. § 7403(c).  By operation of law, where an individual who is liable to pay taxes neglects or refuses to pay, the United States obtains a lien "upon all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321.  While state law determines the property rights and interests, "state law is inoperative to prevent the attachment of liens created by statute in favor of the United States."  Dye v. United States, 528 U.S. 49, 52 (1999) (quoting United States v. Bess, 357 U.S. 51, 56-57 (1958)).  The language of section 6321 is broad and on its face reveals the intent of Congress to reach interest in property that a taxpayer might have.  Dye, 528 U.S. at 56.

A federal tax lien arises on the date the assessment is made and continues until the lien is satisfied or becomes unenforceable.  26 U.S.C. § 6322.  "A tax assessment is given full force of a judgment and, if the amount assessed is not paid when due, administrative officials may seize the debtors property to satisfy the debt."[20]  G.M. Leasing Corp. v. United States, 429 U.S. 338, 352 n.18

---

[20]Absent a provision to the contrary, the priority of the federal tax liens is governed by the common-law rule that "the first in time is the first in right."  United States v. McDermott, 507 U.S. 447, 449 (1993) (quoting United States v. New Britain, 347 U.S. 81, 85 (1954)).  A lien is perfected for applying the doctrine when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established."  McDermott, 507 U.S. at 449 (quoting New Britain, 347 U.S. at 84).  Any lien that is competing with a federal tax lien must be perfected.  In re Priest v. Progressive Savings and Loan Association, 712 F.2d 1326, 1327-28 (9th Cir. 1983).  " A lien is not choate unless there is nothing more to be done and the amount of the lien is established."  In re Priest, 712 F.2d at 1329 (internal punctuation and citation omitted). Since the amount of the liens at issue here include penalties and interest the amount of the lien would not be choate until the notices of tax lien were filed.  Id.  In the State of California's answer to the complaint the following dates of filing the state tax assessments were provided.

Chris and Carrie Capriotti:

| Certificate Number | Date Recorded | Tax Years | Instrument Number |
|---|---|---|---|
| 02302-397599 | November 12, 2002 | 1996 | 2002-0202161 |

(ECF No. 7 at 7.)

Carrie Capriotti:

| Certificate Number | Date Recorded | Tax Years | Instrument Number |
|---|---|---|---|
| 03308-312052 | November 26, 2003 | 1996, 1998, 1999 | 2003-0285744 |

(Id. at 9.)

Chris Capriotti:

| Certificate Number | Date Recorded | Tax Years | Instrument Number |
|---|---|---|---|
| 02302-386990 | November 12, 2002 | 1996, 1998, 1999 | 2002-0202163 |
| 03202-628733 | July 29, 2003 | 1999, 2000 | 2003-0172201 |
| 05281-378176 | October 11, 2005 | 2001, 2002, 2003 | 2005-0240502 |

1  (1977) (internal punctuation and citations omitted).  Property and rights to property include property

2  owned by the taxpayer and also property held by a third party as an alter ego or nominee of the

3  taxpayer.  Holman, 505 F.3d at 1065; United States v. Jones, No. 2:09-cv-02792 DOC (ANx),2012

4  WL 569366, at *9 (C.D.Cal. Feb. 17, 2012); Fourth Investment LP v. United States, No. 3:08-cv-

5  00110 BTM (BLM), 2010 WL 3069685, at *7-8 (S.D.Cal. Aug. 4, 2010).

6      In pertinent part, section 7403 states:

7          The court shall, after the parties have been duly notified of the action,
           proceed to adjudicate all matters involved therein and finally
8          determine the merits of all claims to and liens upon the property, and,
           in all cases where a claim or interest of the United States therein is
9          established, may decree a sale of such property, by the proper officer
           of the court, and a distribution of the proceeds of such sale according
10         to the findings of the court in respect to the interests of the parties and
           of the United States.

11

12     In this instance, federal tax assessments were made against the Capriottis jointly for tax year

13  1997; Chris Capriotti for tax years 1998, 1999, 2000, 2001, and 2002; and Carrie Capriotti for tax

14  years 1998 and 1999.  When the Capriottis neglected or refused to pay their assessed federal tax

15  liabilities after notice and demand for payment, federal tax liens arose on all property and property

16  rights belonging to the Capriottis.  26 U.S.C. §§ 6321, 6322.  Defendants tax assessments were

17  recorded as follows:

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24

25

| 06265-611795 | October 5, 2006 | 2004 | 2006-0213502 |
| 10110-323228 | April 22, 2010 | 2005, 2007 | 2010-0051738 |

(Id. at 12.)  Upon review of the dates of filing the federal tax liens, Plaintiff will need to either file a motion on the priority of the federal and state tax liens or Plaintiff and Defendant State of California Franchise Tax Board will need to stipulate to the priority of the federal and state tax liens.

| Tax Period Ending | Taxpayer(s) | Date(s) Recorded |
|---|---|---|
| 12/31/1996 | Chris Capriotti | 05/01/2001 |
| | Carrie Capriotti | 05/01/2001 |
| | Oakview Trust | 05/01/2001, 07/23/2007 |
| 12/31/1997 | Chris Capriotti | 12/29/2003 |
| | Oakview Trust | 07/23/2007 |
| | Carrie Capriotti | 04/04/2010 |
| 12/31/1998 | Carrie Capriotti | 12/09/2003 |
| | Chris Capriotti | 01/20/2004 |
| | Oakview Trust | 07/23/2007 |
| 12/31/1999 | Chris Capriotti | 12/09/2003 |
| | Carrie Capriotti | 01/20/2004 |
| 12/31/2000 | Chris Capriotti | 09/26/2005 |
| 12/31/2001 | Chris Capriotti | 09/26/2005 |
| 12/31/2002 | Chris Capriotti | 09/26/2005 |

Because the Capriottis have not paid their assessed tax liabilities, the federal tax liens continue to encumber all their property, including the property at 27484 Oak Flat Lane, Clovis, California. The United States has a valid tax lien against Defendants Chris and Carrie Capriotti.

The Capriottis present no evidence or authority to prevent Plaintiff from foreclosing on its tax liens. Plaintiff has provided the Capriottis, the Family Trust, and the Oakview Trust with notice and an opportunity to be heard, and the Court has fully adjudicated the merits of Plaintiff's claim. Plaintiff is entitled to foreclose the federal tax liens against Chris and Carrie Capriotti and sell the property located at 27484 Oak Flat Lane, Clovis, California.

## VIII.

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment, filed January 18, 2013, is GRANTED IN PART and DENIED IN PART as follows;

a.    Plaintiff's motion for summary judgment on the claim that Defendants Chris and Carrie Capriotti are jointly liable for federal tax assessments for taxable years 1997 though and including 2002 in the amount of

42

$2,455,282.84[21] plus interest and other statutory additions from November 1, 2012 according to law, is GRANTED;

b.     Plaintiff's motion for summary judgement on the claim that Oakview Trust is a nominee of the Capriottis is GRANTED;

c.     Plaintiff's motion for summary judgment on the claim that Family Trust and Oakview Trust are sham trusts is DENIED:

d.     Plaintiff's motion for summary judgment on the claim that the transfer of the residence was a fraudulent transfer is GRANTED;

e.     Plaintiff's motion to foreclose on the tax lien is GRANTED; and

2.     Defendant GAO's motion for summary judgment, filed January 18, 2013, is DENIED;

3.     The federal tax liens, notice of which have been filed in the public records of the Fresno County Recorder attach to all property and to all rights to property of Chris and Carrie Capriotti, including the property located at 27484 Oak Flat Lane, Clovis, California;

4.     The federal tax liens of the United States upon the real property of Defendants Chris and Carrie Capriotti, located at 27484 Oak Flat Lane, Clovis, California, shall be foreclosed and sold;

5.     All future hearings and the trial are VACATED;

6.     The Clerk's Office is directed to enter judgment in favor of Plaintiff; and

7.     Following the entry of judgment, Plaintiff shall submit appropriate proposed orders to effectuate the foreclose and sale of the property.


IT IS SO ORDERED.

   **Dated:   April 12, 2013**                    _____
                                        UNITED STATES MAGISTRATE JUDGE

---

[21] $1,049,513.41 against Defendant Chris Capriotti, $1,046,323.13 against Defendant Carrie Capriotti, and $359,446.30 against Chris and Carrie Capriotti jointly.